FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------------x

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC. and LEHMAN BROTHERS OTC DERIVATIVES INC., | Adv. Proc. No. 13-01340 (JMP) |
| Plaintiffs, | |
| v. | |
| INTEL CORPORATION, | |
| Defendant. | |

------------------------------------------------------------------x

## MEMORANDUM DECISION GRANTING MOTION TO DISMISS AND DETERMINING THAT CONTRACT CLAIM IS NON-CORE

WILLIAMS & CONNOLLY, LLP
*Attorneys for Intel Corporation*
725 Twelfth Street, N.W.
Washington, D.C. 20005

    John Buckley, Esq.

WILMER CUTLER PICKERING HALE & DORR LLP
*Attorneys for Intel Corporation*
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006

    Craig Goldblatt, Esq.
    Daniella Spinelli, Esq.

JONES DAY
*Attorneys for Lehman Brothers Holdings Inc. and Lehman Brothers OTC Derivatives Inc.*
222 East 41st Street
New York, New York 10017

    Robert W. Gaffey, Esq.
    Mahesh V. Parlikad, Esq.

JAMES M. PECK
United States Bankruptcy Judge

## *Introduction*

Defendant Intel Corporation ("Intel") seeks dismissal of two counts of the adversary complaint filed by Lehman Brothers OTC Derivatives Inc. ("LOTC") and Lehman Brothers Holdings Inc. ("LBHI," and, together with LOTC, "Lehman") and a determination that the sole remaining count for breach of contract is a non-core count that may not be finally adjudicated by the bankruptcy court under the authority of *Stern v. Marshall*, 131 S. Ct. 2594 (2011). The complaint seeks damages from Intel in relation to the early termination and unwinding of a swap agreement dated August 29, 2008 that was structured to enable Intel to acquire by indirect means a significant quantity of its own publicly-traded securities before the end of the third quarter of 2008. In effect, LOTC undertook by contract to execute purchases of securities for Intel's account that Intel, as an entity in possession of vast quantities of material nonpublic information, could not have obtained directly without exposing itself to potential claims under the securities laws. LBHI's only obligations under the swap agreement were as credit support provider.

To complicate matters, this complex transaction to enable Intel to acquire its own shares was arranged only a few weeks before the bankruptcy of LBHI. Under the agreement, LOTC was to purchase Intel shares during the period from September 2, 2008 through September 26, 2008 (the "Calculation Period") for eventual delivery to Intel on September 29, 2008 (the "Settlement Date"). The complaint alleges that approximately 50.5 million Intel shares were supposed to have been delivered on the Settlement Date in accordance with an agreed formula of volume-weighted average prices ("VWAP") of the shares to be acquired during the Calculation Period. Without mentioning any of the well-known market disruptions and volatility that occurred in the aftermath of LBHI's bankruptcy, the complaint goes on to allege that, as of the

2

Settlement Date, LOTC had purchased approximately 39.7 million shares at a cost of approximately $803 million but that the value on that date had fallen to approximately $686 million.

The architecture of the agreement provided for the transfer of $1 billion from Intel to LOTC in exchange for the contemporaneous transfer of $1 billion from LOTC to Intel. The funds transferred to LOTC served as a prepayment of the cash needed to clear periodic purchases of the Intel shares during the Calculation Period. The reciprocal transfer of $1 billion from LOTC to Intel constituted a posting of collateral by LOTC, and, under the Credit Support Annex, Intel had the right to set off from this collateral amounts owed by LOTC in accordance with the swap agreement. Thus, the $1 billion in cash collateral was property of LOTC that functioned as security to protect Intel against the risk of default by LOTC.

LOTC alleges that it purchased Intel shares during the Calculation Period as contemplated by the swap agreement, but no purchased shares were delivered on the Settlement Date as a consequence of the bankruptcy filing by LBHI as Credit Support Provider on September 15, 2008 and the resulting financial upheaval within the enterprises managed by LBHI. Two weeks later, on the Settlement Date, Intel sent a letter to LOTC referring to the bankruptcy of LBHI as an Event of Default and designating September 29, 2008 as the Early Termination Date of the agreement. The following day, Intel exercised its remedies as secured party and set off against the entire $1 billion in collateral of LOTC plus accrued interest. That setoff was a prepetition act that occurred on September 30, 2008, just three days before commencement of LOTC's own chapter 11 case. Issues surrounding the proper characterization of this setoff frame the procedural contest now before the Court.

LOTC alleges that in setting off the collateral, Intel failed to make a reasonable, good faith determination of its loss under the swap agreement and wrongfully seized all of the collateral in its possession, thereby exercising control over debtor property in violation of the automatic stay and exposing itself to a cause of action for turnover.  The amounts claimed allegedly exceed amounts that LOTC would have owed to Intel under provisions of the agreement that govern the calculation of loss due to LOTC's own default.  LOTC asserts that this loss, if determined based on the market value of the undelivered shares, would be $873 million, not the $1 billion plus interest taken by Intel.

From the point of view of the plaintiffs, this adversary proceeding involves an alleged improper seizure of collateral by Intel of amounts greater than what Intel could have recovered under the terms of the agreement.  The amount in dispute is not less than $127 million, although as much as $312 million may be claimed by LOTC under an alternative damage calculation based on future open market purchases of Intel shares when prices were depressed even further. From the perspective of Intel, it acted reasonably in accordance with the agreement, has no liability whatsoever and properly exercised prepetition setoff rights that converted the collateral to Intel cash.

The motion practice before the Court raises the question of whether LOTC and LBHI have remedies under the Bankruptcy Code or simply have claims for breach of contract that do not arise within their bankruptcy cases.  This question, while sophisticated, is actually one of very limited substantive importance because plaintiffs will retain a cause of action for breach of contract against a financially strong defendant regardless of how the Court decides Intel's motion to dismiss.  When viewed in this practical light, the parties conspicuously are jockeying over the

4

pleadings as a means to obtain what each side no doubt perceives to be an advantage in forum selection.

If LOTC prevails, it is foreseeable that the bankruptcy court will retain control over all counts of a complaint that was drafted with obvious attention to including causes of action grounded in provisions of the Bankruptcy Code. That drafting was intentional and designed to invoke the jurisdiction of this Court. However, if Intel is successful in obtaining dismissal of Count II and Count III (seeking turnover and asserting a stay violation, respectively) and a related ruling that Count I is non-core, the defendant will then have the option to move for withdrawal of the reference, thereby possibly enabling it to press contractual defenses in the district court. The tactical aspects, thus, are undeniable and transparent to any experienced observer.

That having been noted, the above procedural backdrop does not affect the merits of this decision, although it does diminish the real importance of what is at stake here. Regardless of the outcome of Intel's motion, LOTC and LBHI will have their opportunity to challenge the propriety of Intel's loss calculation, and Intel will have the ability to defend itself and claim that it acted strictly in accordance with the requirements of the contract governing the VWAP purchases of its shares.

As described in this decision, the Court grants Intel's motion to dismiss. Even after accepting the truth of all allegations of the complaint, LOTC is unable to maintain claims for a stay violation or for turnover. The undisputed prepetition setoff by Intel conclusively forecloses all property interests of LOTC in the collateral. LOTC may have a claim against Intel for taking more collateral than was proper, but that claim is simply a claim for breach of contract. That claim for damages due to the alleged failure to set off in accordance with the loss provisions of

the contract arose before commencement of the LOTC chapter 11 case, does not arise within the bankruptcy cases of either LOTC or LBHI and is non-core.

## *Discussion*

### *Rule 12(b)(6) Standard*

Federal Rule of Bankruptcy Procedure 7012(b), which incorporates Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), permits a bankruptcy court to dismiss an adversary proceeding if a plaintiff's complaint fails to state a claim upon which relief may be granted. In reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). To survive a challenge to the adequacy of a complaint under Rule 12(b)(6), the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level," and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted).

A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). Therefore, "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether [he] is entitled to offer evidence to support [his] claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998) (citation omitted).

*Turnover (Count II) and Declaratory Judgment – Stay Violation (Count III)*

Counts II (for turnover) and III (for a declaratory judgment that Intel, by its actions, violated the automatic stay) are based on the assertion that when Intel, on September 30, 2008,[1] "set-off and applied the Posted Collateral held by [it] … consisting of Cash, in the amount of US $1,001,966,256.00 … against the amount of US $1,001,966,256.00 payable by [LOTC] under the [agreement]," it was not entitled to do so. Compl. ¶ 41; Compl. Ex. 7. Lehman alleges that Intel's "actual Loss" was less than the amount of the setoff. Compl. ¶ 47.

Lehman asserts a right to turnover under § 542(a) of the Bankruptcy Code of this disputed portion of the collateral, claiming that Intel is "in possession, custody, or control of property that the trustee may use, sell, or lease" under § 363 of the Bankruptcy Code "because the definition of estate property includes all legal and equitable interests of a debtor in property as of the commencement of the case." Compl. ¶ 61. In Count III, Lehman claims that Intel's ongoing refusal to return the disputed portion of the collateral amounts to an "exercise of control" over property of the estate, in violation the automatic stay imposed by § 362(a)(3) of the Bankruptcy Code. However, these two counts of the complaint are based on the flawed premise that Lehman retains the right to assert a property interest in the collateral after a prepetition setoff.

Applicable case law clearly provides that where "a creditor sets off a prepetition debt against a prepetition obligation prior to the bankruptcy case having been commenced, such setoff … effectuate[s] a transfer that prevents the subject property from becoming property of the estate

---

[1] The Court recalls its characterization of the commencement of the chapter 11 cases of LBHI and its affiliates as a "singular event" in *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 407 (Bankr. S.D.N.Y. 2010) ("BNY Trustee"). That characterization was relevant for purposes of interpreting the *ipso facto* language at issue in that proceeding, but is of no consequence here. *See BNY Trustee*, 422 B.R. at 420. In the complaint, Lehman has acknowledged the separateness of the LBHI and LOTC petitions and points out that the setoff occurred prior to the filing date of LOTC's own petition. Compl. ¶¶ 12, 41. Notably, Lehman has not alleged that the setoff occurred post-petition, nor could it under the facts presented.

7

… ." *In re Quade*, 482 B.R. 217, 229 (Bankr. N.D. Ill. 2012) (citations omitted). Prepetition foreclosures, as a general matter, operate to transfer ownership to the foreclosing party. The Second Circuit, in *Rodgers v. County of Monroe (In re Rodgers)*, 333 F.3d 64 (2d Cir. 2003), held that a debtor's mere possession of title to a foreclosed property did not make it property of the estate. *Id.* at 69. The court noted that a prepetition foreclosure sale of the property at issue "effectively cut off [the debtor's] legal title" in the property. *Id*. The debtor's right of redemption had expired, and so the property was not subject to the automatic stay. *Id.*

*Weber v. SEFCU (In re Weber)*, 719 F.3d 72 (2d Cir. 2013) is a recent decision of the Second Circuit that deals with a stay violation in relation to a repossessed motor vehicle. Lehman places considerable reliance on this decision in claiming a continuing property interest in the collateral, but *Weber* is distinguishable. In *Weber*, although the vehicle in question was in the possession of the debtor's lender, the debtor still retained the "right … to redeem the vehicle before sale." *Weber*, 719 F.3d at 77 (citing N.Y. U.C.C. § 9-623). Therefore, retention of the vehicle by the lender was a violation of the automatic stay. *Id.* at 83.

Exercising control over the vehicle violated the stay because the debtor's right to redemption was a property interest that was entitled to bankruptcy protection. *See Weber*, 719 F.3d at 77. No such right exists here. Cash collateral is not like a piece of tangible property. Once taken by a secured party and applied to satisfy a prepetition obligation, both the obligation and the cash collateral lose their separate character and are extinguished. The inescapable problem for Lehman in asserting bankruptcy claims based on Intel's ongoing possession of debtor property is that the asserted property interest no longer exists and has evaporated. Setoff

by Intel has transformed the once-segregated cash collateral account into fungible cash that is now indistinguishable from the other cash held by Intel in its coffers.[2]

Here, the agreement expressly provides that Intel may, following an Early Termination Date, set off the collateral against its losses, thereby eliminating "any claim or right of any nature whatsoever of [LOTC]" in the Posted Collateral, "including any equity or right of redemption." Compl. Ex 4 ¶ 8(a)(iii)-(iv). Assuming the truth of the allegations in the complaint that Intel has exceeded its authority and has not acted reasonably in calculating its loss on account of declaring an Event of Default, Lehman is left with a breach of contract claim, not a right of redemption or a right to reclaim a fund of segregated property held by Intel. The disputed portion of the collateral is not property of the estate. Intel has not violated the automatic stay and holds no property to turn over to Lehman.

Accordingly, for the reasons stated, Counts II and III of the complaint fail to state a claim upon which relief may be granted and are dismissed.

*Analysis of Core v. Non-Core Issues*

Under 28 U.S.C. § 1334, district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), Standing Order M-431 refers all such cases to this

---

[2] Similarly, in a different Lehman-related adversary proceeding, the Court recently determined that a failure of a secured party to return collateral that had been transferred to Barclays Capital gives rise to no more than a breach of contract claim. *See FirstBank Puerto Rico v. Barclays Capital, Inc.*, 492 B.R. 191, 200-201 (Bankr. S.D.N.Y. 2013). The court referred to the explanation by the Supreme Court in *Hennequin v. Clews*, 111 U.S. 676 (1884), that a creditor who holds collateral is bound by its contract "to return it when its purpose as security is fulfilled; but if [it] fails to do so, it is only a breach of contract … [.]" *FirstBank*, 492 B.R. at 200 (quoting *Hennequin*, 111 U.S. at 682). This conclusion would not apply if the setoff by Intel had not occurred prepetition and if an identified fund of cash collateral still existed. Under that hypothetical alternative, the holding in *Weber* would support a finding of a stay violation by Intel and perhaps a count for turnover. The situation presented by Lehman in this adversary proceeding also is distinct from the one that the Court confronted in *Bank of America, N.A. v. Lehman Bros. Holdings, Inc. (In re Lehman Bros. Holdings, Inc.)*, 439 B.R. 811 (Bankr. S.D.N.Y. 2010). There, a setoff occurred in alleged reliance upon one of the safe harbor provisions of the Bankruptcy Code, but, in fact, that post-petition setoff of debtor property violated the automatic stay.

Court.  *See* Amended Standing Order of Reference, dated January 31, 2012 (Preska, C.J.).

Typically, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings, while proceedings "related to" a case under title 11 are referred to as "non-core" proceedings.  *See Stern*, 131 S. Ct. at 2605; *Bank of America, N.A. v. Lightstone Holdings, LLC (In re Extended Stay, Inc.)*, 418 B.R. 49, 55 (Bankr. S.D.N.Y. 2009), *aff'd*, 435 B.R. 139 (S.D.N.Y. 2010) (citations omitted).

"Bankruptcy core jurisdiction extends to all civil proceedings arising under title 11 or arising in a case under title 11."  *Joremi Enters. v. Herskowitz (In re New 118th LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (citing 28 U.S.C. § 157(b)(1)) (additional citations omitted).  A core proceeding, as a general matter, is one that invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case.  *See New 118th*, 396 B.R. at 890 (citing *Binder*, 372 F.3d at 162-63) (additional citation omitted).

"A proceeding is related to a case under title 11, and falls within its non-core jurisdiction, if the outcome might have a conceivable effect on the estate."  *New 118th*, 396 B.R. at 890 (citing *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992)) (additional citations and internal quotation marks omitted).  The breach of contract count discussed below unquestionably is related to the Lehman chapter 11 cases.

*Breach of Contract (Count I)*

Intel classifies the breach of contract count of the complaint as a "paradigmatic non-core matter," one that arises under New York law and could have been brought outside the context of the Lehman bankruptcy.  Reply Supp. Mot. Dismiss 3-4.  Lehman disagrees, maintaining that Count I is core because it "is inextricably tied to the bankruptcy context" and "arose only as a

10

result of the Lehman bankruptcy," relying on the "arising in" hook to core jurisdiction.  Br. Opp'n 19.

However, as this Court previously has held, a claim "arises in" a case under the Bankruptcy Code only if the claim "would have no existence outside of the bankruptcy." *Extended Stay*, 418 B.R. at 58 (quoting *Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*, 144 B.R. 951, 955 (Bankr. S.D.N.Y. 1992) and citing *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 260 (3d Cir. 2007)).  These are the sort of "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Seven Fields Dev. Corp.*, 505 F.3d at 260.

Without a doubt, the LBHI bankruptcy case was the event of default cited by Intel when it declared an early termination of the agreement, but the consequences of that default – allegedly unreasonable loss calculations in accordance with a contract for purchasing shares under a VWAP formula leading to a demand for payment of excess amounts taken by Intel – have no direct connection to the bankruptcy of either LBHI or LOTC other than as a possible claim to augment the estates with cash now held by Intel.

Given the foregoing, and based upon the very same reasoning stated in *Extended Stay*, Count I of the complaint is non-core.  *See generally*, *Extended Stay*, 418 B.R. 49.  The thrust of Count I is that Intel breached the agreement by unreasonably computing its loss and seizing more cash than it deserved.  Regardless of the merits of that proposition, the claim against Intel to recover contractual damages for the cash wrongfully taken does not arise in any bankruptcy case.  The commencement of the LBHI case was the triggering event for early termination but is not a relevant factor for determining whether claims are core or non-core.  This is unmistakably clear where all material liability-creating conduct actually took place a number of days before the

11

bankruptcy filing of LOTC.  Plainly, a cause of action based on a prepetition breach of contract is not one that can arise *only* in a bankruptcy case or that can only be pursued in a bankruptcy court.

Notwithstanding the determination that Count I is non-core, the Court has a concern about the "gaming" of bankruptcy jurisdiction that is evident both in the allegations of the complaint and in Intel's motion to dismiss.  Regardless of whether a particular count is core or non-core, it is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court.  *See, e.g.*, *In re: Lehman Brothers Holding[s] Inc.*, No. 13 Civ. 0748(LGS) (S.D.N.Y. Dec. 17, 2013) (granting motion to withdraw the reference, but referring proceeding to this Court for a Report and Recommendation in light of this Court's familiarity with the issues).  In the interest of orderly case management, the Court proposes that Intel agree to an adjudication of this adversary proceeding in the Lehman bankruptcy court.

## *Conclusion*

For the reasons stated, the Counts II and III of the complaint are dismissed, and Count I is non-core.  Intel shall submit a proposed order consistent with this Memorandum Decision.

SO ORDERED.

Dated: New York, New York
December 19, 2013

/s/ James M. Peck
_____
Honorable James M. Peck
United States Bankruptcy Judge