**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────────

**IN RE LEHMAN BROTHERS HOLDINGS INC.,**
**ET AL.,**                                        **14 Civ. 293 (JGK)**

                        **Debtors.**               **OPINION AND ORDER**

─────────────────────────────────────

**LEHMAN BROTHERS HOLDINGS INC., ET**
**AL.,**

                        **Plaintiffs,**

            **- against -**

**INTEL CORP.,**

                        **Defendant.**

─────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

        Plaintiffs Lehman Brothers Holdings Inc. ("LBHI") and

Lehman Brothers OTC Derivatives Inc. ("LOTC") brought this

action for damages stemming from the termination of a swap

agreement.  The case was automatically referred to the

Bankruptcy Court for the Southern District of New York pursuant

to this District's January 31, 2012 Amended Standing Order of

Reference for Title 11 cases (the "Standing Order").  On

December 19, 2013, the Bankruptcy Court dismissed two of the

plaintiffs' three claims and ruled that the remaining claim was

"non-core."  Lehman Bros. Holdings Inc. v. Intel Corp. (In re

Lehman Bros. Holdings Inc.), 502 B.R. 376, 381-82, 383 (Bankr.

S.D.N.Y. 2013).  Defendant Intel Corp. ("Intel") has now moved
pursuant to 28 U.S.C. § 157(d) for withdrawal of the reference
of this action to the Bankruptcy Court.  For the reasons that
follow, Intel's motion is denied.


                                I.

     The following facts, as alleged in the Complaint and set
forth in the declarations and exhibits submitted by the parties,
are undisputed unless otherwise noted.


                                A.

     The plaintiffs are both Delaware corporations with their
principal places of business in New York.  (Compl. ¶ 12.)
Plaintiff LBHI filed for bankruptcy under Chapter 11 of the
Bankruptcy Code, 11 U.S.C. §§ 1101 et seq., on September 15,
2008, and Plaintiff LOTC filed for bankruptcy under Chapter 11
on October 3, 2008.  (Compl. ¶ 12.)

     Defendant Intel is a Delaware corporation with its
principal place of business in Santa Clara, California.  (Compl.
¶ 14.)

B.

LOTC and Intel entered into a swap agreement designed to enable Intel to acquire a significant amount of its own stock during a "blackout period" when Intel was unable to purchase its own stock directly because of its possession of material non-public information.  (Compl. ¶¶ 1-2, 45.)  Pursuant to the agreement, Intel was required to deliver a $1 billion prepayment to LOTC on August 29, 2008, and, in exchange, LOTC was required to deliver a quantity of Intel shares to Intel on September 29, 2008.  (Compl. ¶¶ 2, 16-17.)  The amount of shares to be delivered was to be determined in accordance with an agreed-upon formula.  (See Compl. ¶¶ 2, 17.)  The plaintiffs allege that according to this formula, LOTC was required to deliver approximately 50.5 million shares to Intel on September 29, 2008.  (Compl. ¶ 2.)

Also on August 29, 2008, LOTC was required to transfer $1 billion to Intel as collateral.  (Compl. ¶¶ 2, 22.)  In the event of an early termination of the agreement "resulting from an Event of Default," the non-defaulting party was permitted to "set[] off" against any amount or obligation due any amount owed by the defaulting party.  (Compl. ¶¶ 24-25, Ex. 2 Part 5(g), Ex. 4 ¶ 8(a).)  Thus, Intel had the right to set off against the collateral posted by LOTC any amounts actually payable by LOTC to Intel pursuant to the agreement.  (Compl. ¶ 24.)

3

On August 29, 2008, Intel wired $1 billion to LOTC, and LOTC posted $1 billion in collateral to Intel. (Compl. ¶¶ 16, 22.) On the same day, LOTC began buying Intel shares. (Compl. ¶ 21.) The plaintiffs allege that by September 29, 2008, LOTC had purchased 39.7 million Intel shares at a cost of $803 million, and that on September 29, 2008, the value of these shares was $686 million. (Compl. ¶ 21.)

On September 15, 2008, LBHI filed for bankruptcy. (Compl. ¶¶ 12, 30.) In a letter dated September 26, 2008, Intel declared that an "event of default" had occurred as a result of LBHI's bankruptcy because LBHI was designated as LOTC's credit support provider under the agreement. (Compl. ¶ 30, Ex. 5.) The letter demanded that LOTC deliver approximately 50.5 million shares to Intel by September 29, 2008. (Compl. ¶ 30, Ex. 5.) When LOTC failed to deliver any shares to Intel on that date, Intel informed LOTC that it was designating September 29, 2008 as the "early termination date" of the agreement and that, pursuant to the agreement, Intel's loss was $1,001,966,256. (Compl. ¶ 37, Ex. 6.)

Section 14 of the parties' Master Agreement defines "loss," in relevant part, as "an amount [the non-defaulting party] reasonably determines in good faith to be its total losses and costs . . . in connection with th[e] Agreement." (Compl. Ex. 1 § 14.) Intel calculated its loss as consisting of the $1

4

billion prepayment plus $1,966,256 in interest on the prepayment.  (Compl. ¶ 40.)  In a letter dated September 30, 2008, Intel informed LOTC that it had exercised its setoff rights against the collateral posted by LOTC in the amount of $1,001,966,256.  (Compl. ¶ 41, Ex. 7.)

LOTC filed for bankruptcy three days later.  (Compl. ¶ 12.)

C.

The plaintiffs filed this lawsuit on May 1, 2013, alleging that Intel's reasonable "loss" as a result of LOTC's failure to perform under the agreement was equal to the value of the approximately 50.5 million Intel shares that LOTC was required to deliver under the agreement, and that this number was lower than the $1 billion plus interest that Intel had seized from the collateral.  (See Compl. ¶¶ 42-43.)  In Count I of the Complaint, the plaintiffs allege that Intel breached its contract with LOTC by seizing and failing to return the $1 billion collateral plus interest that LOTC had posted to Intel as a result of the agreement, and by failing to pay LOTC the interest earned on the collateral.  (Compl. ¶¶ 56-57.)  Count II of the Complaint alleges that Intel violated Section 542(a) of the Bankruptcy Code, 11 U.S.C. § 542(a), by possessing and failing to deliver property of the LOTC estate, (Compl. ¶¶ 60-68), and Count III alleges that Intel violated the automatic

5

stay applicable to the exercise of control over property of the
LOTC estate under Section 362(a) of the Bankruptcy Code, 11
U.S.C. § 362(a)(3).  (Compl. ¶¶ 70-74.)

    Pursuant to the Standing Order, the action was
automatically referred to the United States Bankruptcy Court for
the Southern District of New York, where it was assigned to
United States Bankruptcy Judge James M. Peck, who was presiding
over the bankruptcies of LBHI and LOTC.  Intel then moved to
dismiss Counts II and III of the Complaint for failure to state
a claim upon which relief can be granted, and for a
determination that Count I of the Complaint was a non-core claim
that could not be finally adjudicated by a Bankruptcy Court.
Intel, 502 B.R. at 377.  Judge Peck ruled in Intel's favor.  He
dismissed the bankruptcy claims and concluded that the breach-
of-contract claim was non-core.  Id. at 381-82, 383.  Intel
filed the present motion to withdraw the reference to the
Bankruptcy Court on January 15, 2014.


                              II.

    In relevant part, 28 U.S.C. § 157(d) provides: "The
district court may withdraw, in whole or in part, any case or
proceeding referred under this section, on its own motion or on
timely motion of any party, for cause shown."  While the statute
does not define the phrase "for cause," courts have focused on

                              6

considerations of judicial economy and uniformity in the
administration of bankruptcy law.  See, e.g., Orion Pictures
Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4
F.3d 1095, 1101 (2d Cir. 1993).  Under the framework established
by the Court of Appeals for the Second Circuit, the threshold
question is whether the case involves a core or non-core
proceeding, "since it is upon this issue that questions of
efficiency and uniformity will turn."  Id.  After the District
Court "makes the core/non-core determination, it should weigh
questions of efficient use of judicial resources, delay and
costs to the parties, uniformity of bankruptcy administration,
the prevention of forum shopping, and other related factors,"
such as the presence of a jury demand.  Id.; see also Schneider
v. Riddick (In re Formica Corp.), 305 B.R. 147, 149-50 (S.D.N.Y.
2004).  The moving party bears the burden of demonstrating that
permissive withdrawal of the reference is warranted.  Nisselson
v. Salim (In re Big Apple Volkswagen, LLC), No. 12 Civ. 92, 2013
WL 1245548, at *3 (S.D.N.Y. Mar. 25, 2013).

A.

In its December 19, 2013 Opinion, the Bankruptcy Court
dismissed Counts II and III of the Complaint and ruled that the
only remaining claim is non-core.  There is no dispute that the
Bankruptcy Court would not have constitutional authority to

7

enter final judgment on the remaining claim.  The Bankruptcy
Court may nevertheless hear the case in the first instance and
recommend proposed findings of fact and conclusions of law for
final adjudication in the District Court.  See 11 U.S.C.
§ 157(c)(1).

Intel asserts that the reference should be withdrawn
because it would be inefficient for the parties to have to
litigate the validity of Count I twice—once in front of the
Bankruptcy Court, and once in the District Court, which will
have to review the Bankruptcy Court's recommendations de novo.

While the core/non-core determination is an important
factor, courts have repeatedly emphasized that this factor is
not dispositive of a motion to withdraw a reference.[1]  See, e.g.,
Amended Order, Lehman Bros. Special Fin. Inc. v. Fed. Home Loan
Bank of Cincinnati (In re Lehman Bros. Holdings Inc.), No. 13
Civ. 4121, at 3-4 (S.D.N.Y. Mar. 27, 2014); Lehman Bros.

---

[1] In this case, the Court need not decide the effect of the
Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594
(2011), on the application of the Orion factors.  Stern held
that a Bankruptcy Court could not enter final judgment on some
claims otherwise characterized as core.  See 131 S. Ct. at 2605,
2611-18, 2620.  In this case, there is no dispute that the
remaining claim is non-core, and that the Bankruptcy Court has
no authority to issue a final judgment but can only make
findings of fact and conclusions of law.  See 28 U.S.C.
§ 157(c)(1); see also Silverman v. Tudor Ins. Co. (In re Lenders
Abstract & Settlement Serv. Inc.), 493 B.R. 385, 393-94
(E.D.N.Y. 2013).

Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.), 480 B.R. 179, 195 (S.D.N.Y. 2012); Schneider, 305 B.R. at 150-51; Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg., Inc.), No. 01 Civ. 7964, 2003 WL 68036, at *10-11 (S.D.N.Y. Jan. 8, 2003).

Intel raises the specter of two litigations—one before the Bankruptcy Court and a second de novo determination before this Court.  Intel's concerns are exaggerated.  From a practical standpoint, the Bankruptcy Court will oversee discovery in this adversary proceeding, just as it is overseeing discovery in the numerous other proceedings involving swap agreements with Lehman entities.  Thereafter, there may be a motion for summary judgment, or the matter may be settled.  If a motion for summary judgment were granted, the District Court would review the decision de novo, but the decision by the Bankruptcy Court would be helpful to the Court and the review by the District Court could hardly be characterized as a separate and additional litigation.  If the adversary proceeding progressed to trial, Intel could seek to withdraw the reference at that time—if, for example, a decision depended on judicial determinations of credibility.  See Schneider, 305 B.R. at 151-52.  But until that time, it is plain that efficiency would be served by leaving this adversary proceeding in the Bankruptcy Court, which is currently supervising discovery.  JPMorgan Chase, 480 B.R. at

9

196 ("[G]iven the bankruptcy court's involvement thus far in the litigation, the Court finds that judicial economy weighs against withdrawing the reference at this time." (collecting cases)). This experience will inform the Bankruptcy Court's recommendations, which will therefore be of particular value to the District Court in making its ultimate determination on the matter.  See Amended Order, Fed. Home Loan Bank of Cincinnati, No. 13 Civ. 4121, at 4.

The Bankruptcy Court's resolution of any motion for summary judgment, or any decision by the Bankruptcy Court based on the documentary record, will be very useful to the District Court given the Bankruptcy Court's experience with the Lehman bankruptcies and related adversary proceedings involving swap agreements and derivative-based claims.  See id. at 5; Veyance Techs., Inc. v. Lehman Bros Special Fin., Inc., No. 09 Civ. 8851, 2009 WL 4496051, at *2 n.1 (S.D.N.Y. Dec. 3, 2009). Indeed, in ruling on Intel's motion to dismiss, the Bankruptcy Court noted that "[r]egardless of whether a particular count is core or non-core, it is most efficient and eminently sensible for all disputes involving swap agreements where Lehman and its affiliates are counterparties to be handled in this Court." Intel, 502 B.R. at 383 (citation omitted).  While Intel points out that this comment was not made in the course of an analysis of the Orion factors, the Bankruptcy Court's assessment of its

10

expertise in these matters is entitled to respectful consideration.  Given the Bankruptcy Court's experience with the parties, the case, and the broader context, the Court agrees with the Bankruptcy Court's observation.

Intel argues that any potential benefits from litigating its motion to dismiss in the Bankruptcy Court were lost when Judge Peck retired at the beginning of this year, but Judge Shelly C. Chapman, who is currently overseeing the Lehman bankruptcy case, will be required to acquire the same familiarity with the LBHI and LOTC bankruptcies and other debtor-related adversary proceedings like this one.  Given the complexity of the LBHI and LOTC bankruptcies, the litigation in this pending adversary proceeding that has already occurred in the Bankruptcy Court, and the Bankruptcy Court's ongoing experience with similar cases, concerns about litigating twice are unfounded.  Ultimately, "the second round of litigation will be made much easier by the first."  Amended Order, <u>Fed. Home Loan Bank of Cincinnati</u>, No. 13 Civ. 4121, at 4 (citing <u>Kirschner v. Agoglia</u>, 476 B.R. 75, 83 (S.D.N.Y. 2012)).

B.

Intel also argues that nothing about this case has any bearing on uniformity in the administration of bankruptcy law, and that this factor therefore favors withdrawal of the

reference.  The remaining claim in this action is non-core, and will not require any interpretation of bankruptcy law.  Thus, this factor is neutral to the extent that it contemplates uniformity in the application of the Bankruptcy Code.  See id. at 5.  However, Courts in this District have also emphasized intra-case uniformity, and concluded in analogous contexts that because "[t]he Lehman bankruptcy involves numerous disputes involving derivatives contracts, . . . uniformity is clearly served by leaving all those disputes in the hands of a single court."  Id. at 5 (citing JPMorgan Chase, 480 B.R. at 196-97). Accordingly, this factor weighs against withdrawal.

C.

There is no dispute that the remaining claim is legal rather than equitable in nature.  There is also no dispute that any trial in this case will be non-jury because the parties waived their right to a jury trial.  Intel fails to explain why the legal nature of the claim has any relevance in light of the jury waiver in this case.  See, e.g., Silverman, 493 B.R. at 396 (concluding that the legal nature of the claim entitled the defendant to a jury trial, and that this factor therefore favored withdrawal of the reference); McHale v. Citibank, N.A., No. 09 Civ. 6064, 2009 WL 2599749, at *4 (S.D.N.Y. Aug. 24, 2009) ("Whether a dispute is legal or equitable in nature *and*

*consequently whether the litigants are afforded the right to a jury trial* is another consideration in determining whether the reference should be withdrawn." (emphasis added)).  Indeed, Courts have denied motions to withdraw a reference in cases involving legal claims *and* jury demands where they have found that it would be more efficient for the Bankruptcy Court to handle pre-trial matters.  See, e.g., Schneider, 305 B.R. at 150; see also Murphy v. Cnty. of Chemung (In re Murphy), 482 F. App'x 624, 628 (2d Cir. 2012) ("The mere presence of a jury demand in a case does not mandate withdrawal of the reference . . . .").  Thus, although the legal nature of the remaining claim weighs nominally in support of withdrawal, this factor has no particular relevance in this case and does not support withdrawal of the reference at this time.

D.

As a final matter, each party argues that its opponent has engaged in forum shopping.  Indeed, in ruling on the motion to dismiss, the Bankruptcy Court observed that both "parties conspicuously [were] jockeying over the pleadings as a means to obtain what each side no doubt perceives to be an advantage in forum selection."  Intel, 502 B.R. at 379.

The Bankruptcy Court viewed the plaintiffs as having "drafted [the Complaint] with obvious attention to including

13

causes of action grounded in provisions of the Bankruptcy Code"—
a tactic "designed to invoke the jurisdiction of th[e
Bankruptcy] Court."  Id.  However, as the Bankruptcy Court
recognized, even though Count I is a non-core claim, it is
nevertheless related to the Lehman Chapter 11 cases "as a
possible claim to augment the estates with cash now held by
Intel."  Id. at 383.  This case would therefore have been
subject to automatic referral to the Bankruptcy Court regardless
of whether the plaintiffs had included Counts II and III in the
Complaint.  See id. at 382; Standing Order ¶ 1.  Accordingly,
the inference of forum shopping on the part of the plaintiffs is
weak.

The Bankruptcy Court viewed Intel as having moved to
dismiss Counts II and III and for a determination that Count I
was non-core in order to position itself to bring the present
motion to withdraw the reference so that the District Court
could rule upon the merits of Count I in the first instance.
See Intel, 502 B.R. at 379.  Given the well-recognized
admonition that withdrawal be employed "judiciously in order to
prevent it from becoming just another litigation tactic for
parties eager to find a way out of bankruptcy court," this final
factor weighs slightly against granting Intel's motion.
Schneider, 305 B.R. at 151 (citation omitted).

14

E.

The considerations of efficiency weigh against granting Intel's motion to withdraw the reference at this time.  The motion is therefore denied.


CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, Intel's motion to withdraw the reference to the Bankruptcy Court is **denied.**  The Clerk is directed to **close Docket No. 1** and to **close this case.**


**SO ORDERED.**

**Dated:**    **New York, New York**
             **May 10, 2014**          _____/s/_____
                                           **John G. Koeltl**
                                  **United States District Judge**